## DAVIS v. McQUEEN, receiver, et al.

An action against the maker of a promissory note was instituted by a receiver. It was erroneous to strike the plea of the defendant setting up a valid defense, and to enter judgment for the plaintiff.

DECEMBER 17, 1915.

Complaint. Before Judge Quincey. Charlton superior court, October 7, 1914.

*Parks & Reed,* for plaintiff in error. ·

*Wilson, Bennett & Lambdin,* contra.

ATKINSON, J. The Liberty Banking Company, a banking institution with its principal office at Ludowici in Liberty county, Georgia, conducted a branch business in Folkston, Charlton county, Georgia, under the name of The Bank of Folkston, Branch of the Liberty Banking Company. For convenience the parent company will hereinafter be called the company, and the branch the bank. F. D. Mills, of Folkston, was the cashier of the bank, and C. S. Wainwright, of the same place, was assistant cashier. The company made a contract with Mills to sell him the bank, and in pursuance thereof conveyed to him the banking-house at Folkston and transferred to him all of the assets of the bank, intending that he should thereafter operate the bank upon his own responsibility. As security for the payment of the purchase-price the company received from Mills a mortgage on all the property embraced in the

sale, and also other property, which constituted all that Mills possessed. When Mills had conducted the business for a few days less than a month, the company filed in the superior court a suit against Mills, conducting the business under the name of the bank, for injunction, receiver, etc. N. McQueen was appointed as receiver. He found among the assets of the bank a promissory note for $500, executed by H. J. Davis, upon which there were certain credits. He demanded payment of the balance due, which being refused, he instituted suit against Davis in the same court in which was pending the case wherein he was acting as receiver. Davis filed a plea, admitting execution of the note, but denying that he was indebted in any amount thereon. For further plea he set up facts as above stated, and alleged substantially the following as explanatory of the origin of the note and of his defense thereto: While the company was operating the bank, Mills, the cashier, was individually indebted to defendant in an amount in excess of the amount expressed in the note. When called upon to pay the debt, Mills responded by saying that he did not have the money, but if defendant needed money he would arrange to get it for him from the bank. He stated that defendant could make a note to fall due thirty days after date for the amount needed, and leave it with the bank as a memorandum, and that when it should fall due he (Mills) would pay it. Mills made arrangements for the defendant to secure the money on the note, and the assistant cashier informed Davis of the fact; and in pursuance of the direction of Mills defendant executed the note and delivered it to the assistant cashier while he was in charge during the absence of Mills, and received from him the amount of money called for in the note. When the note fell due, or a day or two thereafter, defendant inquired of the assistant cashier whether or not Mills had paid the note, and was informed that he had done so. This satisfied defendant, and he made no further inquiry about it. As a matter of fact the note had not been fully paid, but without his knowledge or consent was retained in the bank as an overdue paper for several months before the sale of the bank and its assets to Mills, and before he had executed to the company the mortgage to secure the purchase-price. During the interval that the note was so held overdue, defendant had on deposit at the bank more than sufficient to pay the note. It was the duty of the bank, if it regarded him

as a debtor on the note, to charge it against his account or to have notified him while Mills was solvent, in order that he might proceed against Mills for the amount; but it failed to do so, and Mills became insolvent, so that defendant could not collect the amount out of him. Defendant did not know that the note was held as an overdue paper until he was called upon by the attorney for the receiver to pay it. The record in the receiver's case against Mills was referred to as a part of the plea. After the plea was filed an order was taken, by consent, consolidating the two cases so as to be tried together; thus bringing all of the parties before the court, and making all of the pleadings the record in a single case.

According to the allegations of the petition in the receiver's case, which by reference was made a part of the plea, the company proceeded against Mills as its debtor, dealing with the property as his and seeking to subject it to the payment of the debt. The petition did not proceed on the basis that Mills was a mere trustee or other fiduciary agent. When the case proceeded to trial, counsel for the plaintiff moved to strike the plea filed by Davis, on the ground that it failed to set up a valid defense to the action. The court sustained the motion, and entered up a judgment against Davis in favor of the receiver for the amount for which he sued. The defendant excepted. The court committed error in striking the plea. As against Mills, Davis had a complete defense. Mills should have paid the note at maturity, according to his agreement; and having failed to do so, if he alone were suing Davis, he could not recover under the facts. From the inception of the note the company had notice through its agent, the assistant cashier, of the transaction, and the note was allowed to remain in the bank overdue and unpaid. No demand was made upon Davis for payment after Mills had failed to pay the note at maturity, but as a past-due paper the company sold it among all of the other assets of the bank to Mills. By this sale the paper became the property of Mills, and the company thereafter was not otherwise interested in it except as a mortgagee under the mortgage executed by Mills as security for the purchase-money. Under these circumstances the taking of the mortgage would not give the company a lien superior to the equities of the maker. Having notice of the equities of the maker, the company would take subject thereto.

*Judgment reversed. All the Justices concur.*